McKinney, J.,
delivered tbe opinion of tbe Court.
Tbe prisoner was convicted of murder in tbe second degree, at tbe March Term, 1857, of tbe Criminal Court of Memphis, and sentenced to ten years’ imprisonment in tbe penitentiary; to reverse which judgment be has prosecuted an appeal in error to tbis Court.
Several errors have been assigned and insisted on in tbe argument, which we will proceed to notice.
1. It is argued that tbe proof does not support tbe conviction. After an attentive examination of tbe evidence as presented in tbe record before us, we have arrived at a conclusion different from that of tbe counsel for tbe prisoner upon that point. An outline of tbe substance of tbe case is, that tbe prisoner, who, from appearance, has perhaps scarcely attained tbe age of twenty-one years, was sauntering about tbe streets, in a state of intoxication, with two loaded pistols in bis possession. Meeting with tbe deceased — a lad of some fifteen or sixteen years of age — at a livery - stable in *342 Memphis, a trifling dispute arose between them, tbe origin and nature of which are not satisfactorily disclosed, in the course of which the prisoner, without any sufficient excuse or provocation, shot and killed the deceased. In the view we have taken of the case on other grounds, it is not necessary that we should analyze the proof for the purpose of establishing that it justifies the verdict; and we pass from it, with the remark, that the startling increase of crime from the habit of carrying deadly weapons, now so prevalent, demands loudly a most cogent administration of the criminal law: this seems to be the only efficient corrective of this dastardly, assassin-like custom, and it must be applied with determined . energy by the Courts — taking care, however, that settled principles of the law be correctly applied.
2. The next error assigned is in the action of the Court in discharging a juror after his selection. The facts are, that George Y. Smith had been regularly elected, and had taken his seat in the jury-box. Shortly afterwards, and before the jury was made up, said Smith stated to the Court that “he came in” (the Court-room) “in a flurry, and did not know the case; but now, since he knew the case, he remembered that he had formed and expressed an opinion.” Thereupon the Court asked the counsel for the prisoner “what step they proposed to take,” to which they replied that “they had nothing to say.” The Court then withdrew Smith from the jury, and discharged him; but reserved to the prisoner the same number of challenges as if Smith had been challenged for cause.
It was error in the Court to discharge the juror, because it was not shown that he was not a competent *343 juror. Erom any thing appearing in this record, the opinion may have been formed from mere rumor, or upon some ground not affecting the competency of the juror. But of this error the prisoner cannot avail himself after verdict, under the circumstances disclosed in the record. The prisoner and his counsel, when appealed to by the Court, obstinately refused to say any thing. They tacitly referred it to the Court to exercise its discretion in the matter, as if they felt utterly indifferent what the result might be, and no objection to the discharge of the juror was intimated until after he was withdrawn and sent from the box. Even in a criminal case of this magnitude, such apparent trifling with the Court cannot be sanctioned: it is incompatible with a fair and proper practice in the administration of justice. An objection of this nature must be made when the opportunity is fairly presented; and if then tacitly waived, it cannot afterwards be insisted on as a ground of error in this Court.
»-3. The third error insisted on is, that R. Brewster was an incompetent juror. It appears that on the trial of his competency by the Court, Brewster stated, “I did say that defendant ought to be hung.” In answer to an inquiry by the Court as to the ground of that opinion, Brewster answered, “that a few moments after the deceased, William Harver, was shot, and while he was lying in the office at the stable, he came up and inquired about the shooting, and what provocation had been given by the deceased; and that, being informed by the persons standing there that he was shot without provocation, he used the expression that defendant ought to be hung.” Brewster was then asked whether or not *344 lie now had any opinion as to the guilt or innocence of the defendant; he replied that “ he had not.” The Court held that he was a competent juror, and he was put to the prisoner, who challenged him. To this, exception was taken at the time on behalf of the prisoner.
We think the Court erred in holding the juror to be competent, upon the foregoing statement of facts. - Erom his own admission, the juror was present “a few moments” after the murder, and formed an opinion, not from rumor, but from information of persons who, under the circumstances, may fairly be presumed to have had knowledge of the facts attending the homicide, and who, from the statement of the juror, assumed to have such knowledge. By this admission the juror was incompetent, upon the principle of Brakefield’s case, 1 Sneed, 215, having prejudged the prisoner’s case. . And the naked statement that, at the time he was called to serve as a juror, he had no opinion on the subject, was not of itself sufficient to remove the objection to his competency. ' When or how his mind had become disabused of the conviction of the prisoner’s guilt — first received under circumstances so likely to make a deep and lasting impression — is a matter which, strange to say, the Court made no inquiry in regard to; nor did the juror, it seems, think it proper to give any explanation with a view to reconcile the apparently contradictory conclusions to which his mind had been brought at different times. The juror’s statement at the trial that he had no opinion, standing, as it does in this record, wholly unexplained, is inconsistent and absurd, if not incredible. True, his mind may have been disabused of the first impression by subsequent *345 occurrences, in •which case his competency might have been restored; but this ought to have been satisfactorily explained.
4. The error next alleged is that Thomas Doubleday, •who had been selected as a juror, was incompetent. After this juror had been chosen by the prisoner, and had taken his place in the jury-box, he arose and informed the Court that he was an unnaturalized foreigner. The Court reproved him for not having disclosed the fact before he was elected, but ordered him to resume his seat as a juror; to which order the prisoner, by his counsel, at the time excepted.
It is clear that this person was not legally qualified to serve as a juror. By the act of 1809, ch. 119, § 2, “every white male citizen, being a householder and arrived at the age of twenty-one years,” is declared to be legally qualified to act as a grand or petit juror, except in cases of change of venue. By the act of 1835, ch. 6, § 8, “citizens of the county, being freeholders, owners of occupancies, or householders, and twenty-one years of age,” are made competent jurors. Both of these acts exclude an alien from serving as a juror. The phrase, “citizen of the county,” though not strictly accurate, sufficiently indicates the meaning of the Legislature, as a person cannot be a citizen of the county who is not a citizen of the State.
5. The last error relied on is supposed to be in the charge of the Court.
The Court instructed the jury that drunkenness might be considered by the jury, “ for the purpose of determining whether the killing is reduced from murder in the first degree to murder in the second degree; but it cannot *346 be so considered by the jury to determine whether the killing be reduced below murder in the second degree, or from that to manslaughter.” The principle as here stated, with reference to the facts of this -case, is correct, and in strict accordance with the doctrine of the case of Firth vs. The State, 9 Humph., 663, which is so full and explicit upon this general subject that nothing more can be added.
Judgment reversed.